UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
J&J SPORTS PRODUCTIONS INC,

                             Plaintiff,

            -against-

ROSALYN BERRY, individually and doing
business as Catfish Restaurant, and CAT FISH
CAFE, INC., an unknown business entity doing
business as Catfish Restaurant

                             Defendants.
------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
18-cv-5118 (DRH)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court on referral from the Honorable Denis R. Hurley for Report and Recommendation is Plaintiff J&J Sports Productions Inc.'s ("Plaintiff" or "J&J Sports") Motion for Default Judgment. *See* DE [9]. By way of Complaint filed on September 11, 2018, Plaintiff commenced this action against Rosalyn Berry, individually and doing business as Catfish Restaurant, ("Berry") and Cat Fish Cafe, Inc., an unknown business entity doing business as Catfish Restaurant ("Cat Fish Cafe") (together, "Defendants"), alleging violations of the Federal Communications Act of 1934 ("FCA"), as amended, 47 U.S.C. §§ 605 *et seq.* and 553, *et seq. See* Complaint ("Compl."), Docket Entry ("DE") [1]. After Defendants failed to appear or otherwise defend this action, the Clerk of the Court entered default against them on December 27, 2018. *See* DE [8]. On February 22, 2019, J&J Sports filed the instant motion, which Judge Hurley referred to this

1

Court for a recommendation as to whether Plaintiff has demonstrated that the allegations in the Complaint establish Defendants' liability such that the motion should be granted, and if so, to determine the appropriate remedies. *See* Electronic Order dated February 25, 2019. For the reasons set forth herein, it is respectfully recommended that J&J Sports' motion be granted in part and denied in part and that Plaintiff be awarded damages and additional relief as described below.

**I. BACKGROUND**

J&J Sports is a California corporation that distributes sports and entertainment programming internationally. *See* Compl. ¶ 6; Plaintiff's Memorandum in Support of Application for Default Judgment ("Pl. Memo"), DE [9-1], 1. Berry is an "Officer, Director, Shareholder and/or Principal" of Cat Fish Cafe, which operates as Catfish Restaurant located in Jamaica, New York. *See* Compl. ¶ 7. At all relevant times, Plaintiff had the exclusive nationwide commercial distribution rights to the "Floyd Mayweather, Jr. v. Andre Berto WBA/WBC World Welterweight Championship Fight Program" that was telecast nationwide on September 12, 2015 (the "Program"). *See id.* at ¶ 15. J&J Sports entered into sublicensing agreements by which it granted various commercial entities throughout North America limited sublicensing rights to broadcast the Program within their respective commercial establishments. *See id.* at ¶ 16. Plaintiff alleges that on September 12, 2015, Defendants, either directly or through the actions of their agents, unlawfully intercepted and broadcast the Program, knowing that they were not authorized to do so. *See id.* at ¶ 18; Pl. Memo, 2.

J&J Sports filed its Complaint on September 11, 2018. *See* DE [1]. On September 24, 2018, Plaintiff served Cat Fish Cafe with the Summons and Complaint and subsequently served Berry on November 14, 2018. *See* DEs [5], [6]. On December 11, 2018, after the time for Defendants to appear or otherwise defend this action had passed, J&J Sports requested a Certificate of Default, *see* DE [7], and the Clerk of the Court entered default against Defendants on December 27, 2018. *See* DE [8].

On February 22, 2019, Plaintiff filed the instant motion, which seeks, among other relief: (i) a default judgment against Defendants; (ii) statutory damages in the amount of $24,000.00 for violation of 47 U.S.C. § 605(a); (iii) pre- and post-judgment interest; and (iv) attorneys' fees, costs and other expenses incurred by J&J Sports in connection with this action. *See* Plaintiff's Application for Default Judgment by the Court ("Pl. App."), DE [9], ¶¶ 5-7; Pl. Memo, 3-5, 5 n.2, 10.

## II. DEFAULT JUDGMENT STANDARD

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* at 55(b). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*,

3

373 F.3d 241, 246 (2d Cir. 2004); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the entry of a default judgment is "entrusted to the sound judicial discretion of the court," and a party is not entitled to a default judgment as a matter of right. *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, No. 14-cv-4657, 2015 WL 3604078 (E.D.N.Y. June 5, 2015) (internal quotation marks and citation omitted). Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

## III.  DISCUSSION

### A.  <u>Liability</u>

Plaintiff brings claims under Sections 605 and 553 of the FCA.  Both statutes "apply to the unauthorized interception of signals from a cable television system." *Kingvision Pay-Per-View Ltd. v. Zalazar*, 653 F. Supp. 2d 335, 339 (S.D.N.Y. 2009) (citing *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 132 (2d Cir. 1996)).  Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a).  Under Section 553, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).

Where, as here, a plaintiff brings claims under both Sections 553 and 605 based on the same set of facts, "the law in this Circuit is clear that [the] plaintiff may recover under only one of those statutes."  *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011) (collecting cases); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-cv-1878, 2007 WL 2891016, at *3 (E.D.N.Y. Sept. 28, 2007) ("A plaintiff cannot recover under both 47 U.S.C. § 605 and § 553.") (internal quotation marks, alteration and citation omitted).  Although Plaintiff alleges violations of both Sections 553 and 605, it elects to recover statutory damages only under Section 605.  *See* Pl. App. ¶ 5; Pl.

5

Memo, 4-5, 11.  Accordingly, the Court conducts its analysis of liability under Section 605.

    *i.    Cat Fish Cafe*

Plaintiff alleges that Cat Fish Cafe is "an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Catfish Restaurant operating at 147-07 Guy R. Brewer Boulevard, Jamaica, NY 11434." Compl. ¶ 13.  The Court takes judicial notice of an entry in New York State's Department of State Corporation and Business Entity Database, which lists Cat Fish Cafe as a domestic business corporation located in Queens, New York that filed documents with the Department of State in 2010 and dissolved by proclamation in 2016.[1]  *See Saudi v. Marine Atl., Ltd.*, No. 02-cv-2495, 2005 WL 8156849, at *4 (E.D.N.Y. July 1, 2005) (taking judicial notice that entity "is a Delaware corporation, and is listed as such on the New York Department of State Corporation and Business Entity Database").  Although Cat Fish Cafe dissolved in 2016, it may still be sued for "any liability incurred before [its] dissolution." *J & J Sports Prods., Inc. v. Tellez*, No. 11-cv-2823, 2011 WL 6371521, at *2 (E.D.N.Y. Dec. 20, 2011); *see also* N.Y. Bus. Corp. Law § 1006(b).  Thus, because Cat Fish Cafe was active at the time of the alleged FCA violations, it is subject to liability for any established violations.

---

[1] *See* Corporation and Business Database, New York Department of State, Division of Corporations, https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY (search "Cat Fish Cafe, Inc.," last visited July 22, 2019).

6

Plaintiff's well-pleaded allegations state a valid claim against Cat Fish Cafe. J&J Sports had the exclusive license to sublicense and broadcast the Program. *See* Compl. ¶ 15; Plaintiff's Affidavit ("Pl. Aff."), DE [9-2], ¶ 3; Pl. Aff., Exhibit ("Ex.") 1, Closed Circuit Television License Agreement. Thus, to broadcast the Program lawfully, Cat Fish Cafe was required to enter into a sublicense agreement with Plaintiff. Pl. Aff. ¶ 3. However, Cat Fish Cafe never entered into such an agreement and nonetheless screened the Program at Catfish Restaurant on September 12, 2015. *See id.* at ¶¶ 3, 7; Declaration of Plaintiff's Counsel in Support of Application for Default Judgment by the Court ("Pl. Decl."), DE [9-3], Ex. 5, Affidavit of Donna McGuire ("McGuire Aff."), 1 (observing Program on four televisions in Catfish Restaurant). Plaintiff's allegations are sufficient to establish liability under Section 605(a). *See, e.g., J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-cv-6505, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016); *J & J Sports Prods., Inc. v. McAdam*, No. 14-cv-5461, 2015 WL 8483362, at *3 (E.D.N.Y. Dec. 9, 2015); *J & J Sports Prods., Inc. v. 1400 Forest Ave. Rest. Corp.*, No. 13-cv-4299, 2014 WL 4467774, at *6 (E.D.N.Y. Sept. 9, 2014); *Tellez*, 2011 WL 6371521, at *3. Accordingly, the Court respectfully recommends that Plaintiff's motion for default judgment as to Cat Fish Cafe be granted.

ii.   *Berry*

Plaintiff also seeks to hold Berry individually liable. Where, as here, a plaintiff successfully alleges that an establishment has violated Section 605, the plaintiff may seek to impose individual liability on the establishment's owner

7

"under the theories of 'contributory infringement' or 'vicarious liability.'" *LX Food Grocery Inc.*, 2016 WL 6905946, at *2 (quoting *Softel, Inc v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)). A defendant may be held liable for contributory infringement where she authorizes the Section 605 violations, and she may be held vicariously liable where she had a "right and ability to supervise that coalesced with an obvious and direct financial interest." *Id.* (citing *Softel*, 118 F.3d at 971).

Plaintiff's complaint suggests that it seeks to hold Berry liable on theories of both contributory infringement and vicarious liability. On a motion for default judgment, "a pleading's legal conclusions are not assumed to be true" and "the factual allegations in the complaint must themselves be sufficient to establish a right to relief." *United States v. Thomas*, No. 18-cv-1104, 2019 WL 121678, at *4 (E.D.N.Y. Jan. 7, 2019) (internal quotation marks and citation omitted).

J&J Sports alleges that Berry had the "obligation," "right and ability" to supervise the activities of Catfish Restaurant and that she "directed or permitted employees of Catfish Restaurant to unlawfully intercept and broadcast [the] Program . . . or intentionally intercepted, and/or published the Program at Catfish Restaurant herself." Compl. ¶¶ 8-10. Plaintiff further alleges that Berry "had an obvious and direct financial interest in the activities of Catfish Restaurant . . . [and] that the unlawful broadcast of [the] Program . . . resulted in increased profits for Catfish Restaurant." *Id.* at ¶¶ 11-12.

8

J&J Sports' allegations are nothing more than a "formulaic recitation of the elements of a cause of action" under Section 605, which is insufficient to establish a prima facie case. *See LX Food Grocery Inc.*, 2016 WL 6905946, at *3 (internal quotation marks and citation omitted) (holding that individual defendants were not vicariously liable under Section 605 where plaintiff alleged that "both Individual Defendants 'had a right and ability to supervise the infringing activities . . . on the night the [program] was shown at Defendant's Establishment,' and that they 'had an obvious and direct financial interest in the exploitation of the copyrighted materials.'"); *J & J Sports Prod., Inc. v. El Ojo Aqua Corp.*, No. 13-cv-6173, 2014 WL 4700014, at *4 (E.D.N.Y. Aug. 29, 2014), *report and recommendation adopted*, No. 13-cv-6173, 2014 WL 4699704 (E.D.N.Y. Sept. 22, 2014) (allegations that defendant "is an officer, director, shareholder and/or principal of [defendant establishment] and had a right and ability to supervise the infringing activities complained of . . . [and] has an obvious and direct financial interest in the exploitation of the copyrighted materials . . ." merely "parrots pertinent judicial decisions" and thus "accomplishes nothing for purposes of establishing liability upon a defendant's default") (internal quotation marks, alterations and citations omitted). Plaintiff's allegations do nothing to suggest that Berry had anything to do with the decision to broadcast the Program, *see El Ojo Aqua Corp.*, 2014 WL 4700014, at *4, and J&J Sports' assertion that Berry was an "Officer, Director, Shareholder and/or Principal," does not support a finding that Berry had the kind of supervisory control Plaintiff asserts, especially considering there is nothing in the

record to demonstrate which, if any, of the various positions Berry actually held.[2] *See J & J Sports Prods., Inc. v. Daley*, No. 06-cv-238, 2007 WL 7135707, at *4 (E.D.N.Y. Feb. 15, 2007); *see also J & J Sports Prods., Inc. v. James*, No. 17-cv-5359, 2018 WL 3850731, at *5 (E.D.N.Y. July 25, 2018), *report and recommendation adopted*, No. 17-cv-5359, 2018 WL 3848921 (E.D.N.Y. Aug. 13, 2018) (allegations that defendant "directed" or "permitted" unauthorized broadcasting were insufficient to establish contributory liability). Further, J&J Sports' allegations are insufficient to establish that Berry had a financial interest in broadcasting the Program. Plaintiff fails to support its conclusory allegation that Berry gained "increased profits" on the night of the Program, *see* Compl. ¶ 12, with allegations that Berry collected a cover charge or hosted a large number of patrons on the night of the Program. *But cf. James*, 2018 WL 3850731, at *6 (recommending finding of individual liability where plaintiff alleged cover charge and large number of patrons). Thus, there is only "speculation" to support the conclusion that Berry had a financial interest in broadcasting the Program. *See Daley*, 2007 WL 7135707, at *4 (recommending that court decline to hold individual liable for defendant restaurant's FCA violation and cautioning J&J Sports to "take care not to sue individuals without any reasonable basis for so doing").

Accordingly, J&J Sports' allegations are insufficient to establish liability under either contributory infringement or vicarious liability, and the Court

---

[2] The Court further notes that the entry in the New York State Division of Corporations Database, of which the Court has explained it takes judicial notice, *see supra* pg. 6, does not identify Berry in any capacity.

10

respectfully recommends that Plaintiff's motion for default judgment as to Berry be denied.

### B. Damages

Because J&J Sports has established liability as to Cat Fish Cafe, Plaintiff is entitled to damages. The court must ascertain damages with "reasonable certainty." *Hosking v. New World Mortg., Inc.*, 570 Fed. Appx. 28, 31 (2d Cir. 2014). To prove damages, the plaintiff need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). An evidentiary hearing is not required so long as there is a basis, demonstrated through detailed affidavits and other documentary evidence, for the damages awarded. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). J&J Sports requests: (i) $6,000.00 pursuant to § 605(e)(3)(C)(i)(II); (ii) $18,000.00 in enhanced statutory damages pursuant to § 605(e)(3)(C)(ii); (iii) pre- and post- judgment interest; and (iv), attorneys' fees and costs pursuant to § 605(e)(3)(B)(iii). *See* Pl. App. ¶¶ 5-6; Pl. Memo, 5, 5 n.2, 10.

  i. *Statutory damages under § 605(e)(3)(C)(i)(II)*

Section 605 of the FCA provides for a per-violation recovery "in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]" 47 U.S.C. §605(e)(3)(C)(i)(II). Assessment of the amount of statutory damages "rests within the sound discretion of the Court. *Time Warner Cable of New York City v. Sanchez*,

11

No. 02-cv-5855, 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003) (citations omitted). Courts in the Second Circuit typically award statutory damages based on one of two methodologies: the "flat fee" method or the "per person" method. *McAdam*, 2015 WL 8483362, at *4 (citation omitted). Under the "flat fee" method, the Court calculates damages based on the licensing fee the defendant would have paid the plaintiff to legally show the program at issue. *See id.* (citations omitted). Under the "per person" method, the Court calculates damages "by multiplying the number of individuals who viewed the broadcast by the typical fee for a residential customer to view the [broadcast]." *Id.* (citations omitted). Upon calculating damages under both methods, courts grant the higher of the two amounts. *See id.* (citations omitted).

Here, the cost to broadcast the Program lawfully was $2,000.00. Pl. Aff. ¶ 8. Although Plaintiff does not offer an estimate of how much it would recover under the per person method, courts in this district have "often multiplied the number of patrons by $54.95, the price an individual would pay to view the event at home on a pay-per-view channel." *J & J Sports Prods., Inc. v. Shots Pool Hall, Inc.*, No. 16-cv-5067, 2018 WL 1115915, at *3 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, No. 16-cv-5067, 2018 WL 1116551 (E.D.N.Y. Feb. 27, 2018). J&J Sports alleges that Catfish Restaurant hosted 7-16 patrons on the night of the Program. *See* McGuire Aff, 1-2. Thus, using this calculation, Plaintiff's damages under the per person method would be $879.20.

12

Plaintiff urges the Court to abandon the methods used in this Circuit and instead issue an award of $6,000.00, which is three times the licensing fee Cat Fish Cafe would have paid J&J Sports to legally broadcast the Program. *See* Pl. Memo, 6-8. In support of its argument, Plaintiff relies on district court decisions outside of this Circuit. *See, e.g., id.* at 8. As this Court is "not bound by the decisions of any other district court in the nation, nor by the decisions of any circuit court other than the Second[,]" the Court rejects J&J Sports' request and calculates damages using the methods adopted by courts in the Second Circuit. *See L.S. v. Webloyalty.com, Inc.*, No. 10-cv-1372, 2014 WL 3547640, at *5 (D. Conn. July 17, 2014)*; see also Saraswat v. Bus. Integra, Inc.*, No. 15-cv-4680, 2019 WL 1865193, at *14 (E.D.N.Y. Apr. 25, 2019). Because the flat fee method yields a damages award of $2,000.00, while the per person method yields an award of $879.20, the Court respectfully recommends that Plaintiff be awarded $2,000.00 in damages. *See McAdam*, 2015 WL 8483362, at *4 (awarding higher damages).

    ii.    *Enhanced damages under § 605(e)(3)(C)(ii)*

J&J Sports also seeks $18,000.00 in enhanced damages on the grounds that Defendants' actions were willful because the Program could not be "mistakenly, innocently or accidently intercepted." *See* Pl. Aff. ¶ 9; Pl. Memo., 9-10. Section 605 provides for enhanced damages of up to $100,000.00 if "the violation was committed willfully and for purposes of direct and indirect commercial advantage or private gain." 47 U.S.C. § 605 (e)(3)(C)(ii).

13

Many courts in this Circuit have found that intercepting and broadcasting a televised event without permission constitutes willful conduct. *See, e.g.*, *Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."); *McAdam*, 2015 WL 8483362, at \*5 ("By intercepting the transmission of the Event without paying fees or entering into a licensing agreement with Plaintiff, Defendants committed a deliberate act that is sufficient to establish willfulness under Section 605."); *J & J Sports Prods., Inc. v. Big Daddy's Theme Palace*, No. 14-cv-2765, 2015 WL 58606, at \*4 (E.D.N.Y. Dec. 12, 2014), *report and recommendation adopted*, No. 14-cv-2765, 2015 WL 58606 (E.D.N.Y. Jan. 5, 2015) ("Plaintiff correctly notes that the intercepting and broadcasting of the event, without authorization, is a deliberate act, and therefore establishes willfulness."). Here, Plaintiff has established that Cat Fish Cafe's conduct was willful. As discussed above, Cat Fish Cafe broadcast the Program, without obtaining a license from J&J Sports to do so. Pl. Aff. ¶ 7. Because the Program was encrypted, the only way that Cat Fish Cafe could broadcast it without Plaintiff's authorization would be through one or more of several unlawful interception techniques, such as: (i) installing a "blackbox" on a cable TV line to descramble reception of a pay-per-view broadcast; (ii) installing a "smartcard" on a satellite receiver line to descramble reception of a pay-per-view broadcast; (iii) purposefully misrepresenting a commercial establishment as a residential property

14

to purchase pay-per-view at the residential rate, rather than the higher commercial rate; or (iv) using illegal unencryption devices. *See id.* at ¶ 10.

The Court's conclusion of Cat Fish Cafe's willfulness does not automatically entitle J&J Sports to enhanced damages, however. Courts consider various factors to determine whether to award enhanced damages, including "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *J & J Sports Prods., Inc. v. Chulitas Enter. Corp.*, No. 12-cv-3177, 2014 WL 917262, at *5 (E.D.N.Y. Mar. 10, 2014) (internal quotation marks and citation omitted). Plaintiff has not alleged facts to support an award of enhanced damages under any of these factors. First, there was neither an allegation in the Complaint nor evidence in J&J Sports' filings of a repeated violation. Second, Plaintiff's alleged damages amount to $2,000.00, the cost of the licensing fee, *see* Pl. Aff. ¶ 19; Pl. Memo, 8, which "is already factored into the statutory damages award." *J & J Sports Prods., Inc. v. J & O LLC*, No. 17-cv-4180, 2018 WL 4522098, at *8 (E.D.N.Y. July 25, 2018), *report and recommendation adopted*, No. 17-cv-4180, 2018 WL 3991493 (E.D.N.Y. Aug. 21, 2018) (quoting *LX Food Grocery Inc.*, 2016 WL 6905946, at *5). Third, Plaintiff offers no evidence upon which the court can conclude that Cat Fish Cafe's monetary gains were substantial. Catfish Restaurant does not have a bar, and Plaintiff offers no evidence of food prices. *See* McGuire Aff., 2. Fourth, Plaintiff does not allege that

15

Cat Fish Cafe advertised the Program. Finally, Cat Fish Cafe did not collect a cover charge or charge a premium for food on the night of the Program. *See* McGuire Aff., 1. Accordingly, the Court respectfully recommends denying an award of enhanced damages. *See J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc.*, No. 15-cv-3771, 2017 WL 933079, at *5 (E.D.N.Y. Mar. 8, 2017) (declining to award enhanced damages where plaintiff did not allege any of the five factors); *but cf. McAdam*, 2015 WL 8483362, at *5 (E.D.N.Y. Dec. 9, 2015) (awarding enhanced damages where defendants advertised their broadcast of the program and collected a cover charge resulting in at least $2,000.00 in admission fees).

 iii. *Pre- and post-judgment interest*

  Plaintiff also seeks recovery of pre- and post-judgment interest at the federal statutory rate. *See* Pl. Memo, 5 n.2. Although the FCA does not provide for awards of pre- or post-judgment interest, the Court has discretion to award pre-judgment interest when doing so is "fair, equitable, and necessary to compensate the wronged party fully." *See Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 835 (2d Cir. 1992). Courts should not award pre-judgment interest, however, where "the statutory obligation on which interest is sought is punitive in nature." *LX Food Grocery Inc.*, 2016 WL 6905946, at *5 (quoting *Wickham Contracting Co.*, 955 F.2d at 834). Courts in this district have noted that "statutory damages under the [FCA] are analogous to punitive damages in that they are designed to deter others from similar infringing activity[,]" and thus, have declined to award prejudgment interest. *J & J Sports Prods., Inc. v. La*

16

*Ruleta, Inc.*, No. 11-cv-4422, 2012 WL 3764062, at *5 (E.D.N.Y. Aug. 7, 2012), *report and recommendation adopted*, No. 11-cv-4422, 2012 WL 3764515 (E.D.N.Y. Aug. 29, 2012) (internal quotation marks, alteration and citation omitted); *Big Daddy's Theme Palace, Inc.*, 2015 WL 58606, at *5 ("Most courts in this district that have addressed this issue have declined to award prejudgment interest[.]"). Accordingly, the Court recommends that J&J Sports' request for pre- and post-judgment interest be denied.

      *iv.*    *Attorneys' fees and costs under § 605(e)(3)(B)(iii)*

Finally, Plaintiff requests that it be granted 30 days from the date the judgment becomes final to submit its motion for costs and attorneys' fees. *See* Pl. App. ¶¶ 6-7; Pl. Memo, 10. Pursuant to Section 605, an award of attorneys' fees to a prevailing party is mandatory. *See* 47 U.S.C. § 605(e)(3)(B)(iii); *J & J Sports Prods., Inc. v. Boyd*, No. 17-cv-6822, 2019 WL 2412938, at *1 (E.D.N.Y. Apr. 30, 2019), *report and recommendation adopted*, No. 17-cv-6822, 2019 WL 2410421 (E.D.N.Y. June 7, 2019). Accordingly, the Court respectfully recommends that J&J Sports be granted leave to file a motion for attorneys' fees and costs within 30 days of entry of a final judgment.

## IV. CONCLUSION

For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion for default judgment against Cat Fish Cafe be granted in part and denied in part and that J&J Sports be awarded $2,000.00 in statutory damages. The Court further recommends that Plaintiff's request for enhanced damages and

17

pre- and post- judgment interest against Cat Fish Cafe be denied. Additionally, the Court recommends that J&J Sports' motion for default judgment against Berry be denied. Finally, the Court recommends that Plaintiff be allowed to submit its motion for attorneys' fees and costs, supported by appropriate documentation, within 30 days from the entry of final judgment.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below. Plaintiff is directed to serve a copy of it on Defendants via first-class mail and file proof of service by ECF within three days of the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            July 22, 2019

                                        /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge